```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
                                         :
UNITED STATES OF AMERICA                 :
                                         :    INDICTMENT
    - v -                                :
                                         :
CHRISTOPHER ST. LAWRENCE, and            :    16 Cr. 259
N. AARON TROODLER,                       :
                                         :
                                         :
                    Defendants.          :
                                         :
- - - - - - - - - - - - - - - - - - - - X
```

## COUNT ONE

### (Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

### BACKGROUND

1. At all times relevant to this Indictment:

### Relevant Entities

a. The Town of Ramapo (the "Town") was an incorporated municipality in Rockland County, New York. It was governed by an elected Town Supervisor and an elected Town Board. The Town was authorized by state law to issue bonds to the public. As of August 2015, the Town had $128,150,000 in outstanding bonds, not including bonds for which the Town had guaranteed the payment of principal and interest.

b. The geographic area of the Town consisted of twelve incorporated villages and unincorporated areas that were not part of a village. The types of government services provided by each

village government varied among the villages. For example, some villages had independent police departments, while the Town provided police protection to the other villages and to the unincorporated areas of the Town. The villages were authorized by state law to tax real property within their geographic areas to pay for those services.

c. The Ramapo Local Development Corporation ("RLDC"), was incorporated as a not-for profit corporation in New York in 2008 to undertake development initiatives in Ramapo. The RLDC was authorized by state law to issue bonds to the public. The RLDC has built a minor league baseball stadium and a condominium project.

**The Defendants**

d. CHRISTOPHER ST. LAWRENCE, the defendant, was the elected Supervisor of the Town and, therefore, was also a member of the elected Town Board. ST. LAWRENCE was also the Town's appointed Director of Finance. He also served as a member of the RLDC's Board of Directors and the RLDC's President.

e. N. AARON TROODLER, the defendant, was the RLDC's Executive Director and an Assistant Town Attorney for the Town.

**The Town's Finances**

f. The Town's finances were organized primarily by several distinct funds. Most of the governmental funds corresponded to a government service provided by the Town, such as police

2

protection or the maintenance of roads. The expenses incurred by the Town from providing a particular government service were supposed to be paid from the corresponding governmental fund. The revenues of each governmental fund were raised in substantial part through property taxes imposed on those properties within the Town's geographic area that received the benefit of the government service financed by that fund. For example, taxes for police protection were not imposed on properties within the Town's villages that had independent police departments, while taxes to be paid to the Town's Police Fund were imposed on other properties within the Town.

g.    The Town's General Fund was the primary operating fund of the Town. Revenues and expenditures that were not required by law to be accounted for in other funds were supposed to be included in the General Fund.

h.    The financial statements for the General Fund, as well as those for the Town's other governmental funds, were supposed to demonstrate the performance of the fund within a calendar year. To do so, the financial statements were supposed to report current assets and current liabilities. A current asset was any asset that was reasonably expected to be used, consumed or exhausted within that year. A current liability was any liability that was due to be paid within that year.

i.    Revenues, such as property taxes, were supposed to be included, or recognized, in the General Fund as soon as they

3

were measurable and available. Revenues were considered available if they were collectible within the calendar year or soon enough thereafter to pay liabilities incurred in that year. Expenditures generally were supposed to be included, or recognized, in the General Fund when a liability was incurred.

j.    The cumulative difference between revenues and expenditures in a governmental fund over time was the fund's balance. A positive balance was a cushion against financial difficulties such as reduced revenues or unexpected expenses that could arise in the future. A municipality that lacked a sufficient fund balance could experience cash flow problems which could require it to resort to short-term borrowing to respond to unexpected financial problems. Since fund balance was an accumulated result of operations over time, it was a leading indicator of a municipality's financial condition. Since the General Fund was the primary operating fund of the Town, its balance was a primary indicator of the Town's financial condition.

### The RLDC's Development Projects

k.    In or about May 2010, Ramapo's Town Board adopted a resolution to guarantee payment of $16,500,000 in long-term bonds to be issued by the RLDC to build a minor league baseball stadium. On or about August 24, 2010, the resolution was rejected by a margin of approximately 70 percent of the votes cast in a Town-wide public referendum. Following this rejection of the Town Board's resolution

4

by the Town's voters, CHRISTOPHER ST. LAWRENCE, the defendant, publicly stated that the baseball stadium would be constructed with private funds.  The stadium project, including the acquisition of the land, the development of the site and construction of both the stadium building and a separate maintenance building on the site, cost more than $58,000,000.  More than half of that amount was financed by the Town.  The stadium opened in June 2011.

1.    Beginning in or about 2010, the RLDC began construction in three phases on Ramapo Commons, a 132 unit condominium project.  The construction was financed primarily through bank loans.  The terms of the bank loans required that the RLDC pay more than 90% of the proceeds of each condominium sale to the bank to pay down the loans.

**The Town's Bond Issues**

2.    From 2012 through 2015, the Town issued the bonds described below, as well as others.  Each of the bond issues described below was made pursuant to an Official Statement or placement memorandum that contained information regarding, among other things, the Town's finances and containing, among other things, the Town's latest audited financial statements.  CHRISTOPHER ST. LAWRENCE, the defendant, executed each of the Official Statements and placement memoranda.

a.    On or about September 21, 2012, the Town issued $3,985,000 in public improvement refunding bonds and $18,045,000 in

5

bond anticipation notes with maturity dates ranging from June 15, 2013 to June 15, 2016 for sale to the public.

b. On or about November 28, 2012, the Town issued $19,330,000 in public improvement bonds with maturity dates ranging from November 1, 2013 to November 1, 2035 to the public.

c. On or about April 5, 2013, the Town issued $1,000,000 in public improvement bonds and $11,245,000 in public improvement refunding bonds with maturity dates ranging from March 15, 2014 to March 1, 2034 for sale to the public.

d. On or about May 24, 2013, the Town issued $31,200,000 in bond anticipation notes with a maturity date of May 28, 2014 for sale to qualified institutional buyers pursuant to the Securities Act of 1933.

e. On or about May 21, 2014, the Town issued $33,175,000 in bond anticipation notes with a maturity date of May 27, 2015 and $2,495,000 in public improvement bonds with a maturity date of May 15, 2024 for sale to qualified institutional buyers pursuant to the Securities Act of 1933.

f. On or about May 19, 2015, the Town issued $33,345,000 in public improvement bonds with maturity dates ranging from May 15, 2016 through May 15, 2028 for sale to the public.

**The RLDC's Bond Issues**

3. In 2011 and again in 2013, the RLDC made the two bond issues described below. Both of these bond issues were made pursuant

6

to an Official Statement that contained information regarding, among other things, the RLDC's and the Town's finances and containing, among other things, the RLDC's and the Town's latest audited financial statements.   N. AARON TROODLER, the defendant, certified that each of these Official Statements did not contain any untrue statements of material facts and did not omit any material fact necessary to make statements made in the Official Statement, in light of the circumstances under which they were made, not misleading.

a.   On or about April 15, 2011, the RLDC issued $25,000,000 in revenue bonds with a maturity date of March 15, 2016 for sale to the public.   The Town guaranteed payment of principal and interest to the bondholders.   It further agreed to make the biannual payments of principal and interest and seek reimbursement for those payments from the RLDC.

b.   On or about February 7, 2013, the RLDC issued $25,000,000 in revenue refunding bonds and revenue bonds with maturity dates ranging from March 15, 2015 to March 15, 2041 for sale to the public.   The Town guaranteed payment of principal and interest to the bondholders.   It further agreed to make the biannual payments of principal and interest and seek reimbursement for those payments from the RLDC.   The proceeds of the bonds were used primarily to pay down the RLDC's April 2011 bonds.

### Bond Trading and Risk

4.   Once issued, the prices of all the bonds issued by the

Town and the RLDC varied based on, among other factors, the market's perception, based on publicly available information, of the risks presented by the bonds. Some of those risks were that the RLDC or the Town would fail to make interest or principal payments in full amounts or in a timely manner. Due to the Town's guarantee of payment of principal and interest on the RLDC's bonds, the risks presented by one of the two issuers were relevant to an evaluation of risks of bonds issued by the other issuer. Changes in a bond's price also changed the bond's yield, which was the amount of return on the bond relative to the price paid for the bond. A bond's yield, therefore, also reflected the market's perception, based on publicly available information, of the risks presented by the bond.

## THE SCHEME TO DEFRAUD INVESTORS

5. From in or about November 2009 to the present, CHRISTOPHER ST. LAWRENCE and N. AARON TROODLER, the defendants, together with others known and unknown have engaged in a scheme to defraud investors in all bonds issued by the Town and by the RLDC that were outstanding during that period. The defendants and others made materially false and misleading statements and omitted material facts regarding the finances of the Town and the RLDC, as set forth below. They did so primarily to inflate the balance of the General Fund, partly to conceal both the extent to which the Town financed the stadium project and the impact of that financing, and to conceal the RLDC's illiquidity. As a result of the scheme, investors in all

8

Town and RLDC bonds outstanding during the relevant time period have, to date, suffered millions of dollars in losses.

### The Town's $3,663,547 Receivable

6.    In April 2011, CHRISTOPHER ST. LAWRENCE and N. AARON TROODLER, the defendants, and others represented that the Town's General Fund had an unaudited balance of $3,011,117 as of December 31, 2010.  That fund balance included, among other things, a $3,663,547 receivable arising from the sale of land from the Town to the RLDC.  These representations regarding the $3,663,547 receivable and, therefore, the General Fund balance as of December 31, 2010, were materially false because the receivable was a fabrication.

### The Town's $3,080,000 Receivable

7.    On or about December 30, 2009, the RLDC agreed to purchase from the Town property in Ramapo known as The Hamlets for $3,080,000.  The Town and the RLDC agreed that the RLDC would pay the $3,080,000 to the Town on or before December 30, 2010 unless the Town Attorney agreed otherwise in writing.  The Town recognized a $3,080,000 receivable from the RLDC as an asset in the General Fund as of December 31, 2009 arising from this agreement.

8.    The RLDC's purchase of The Hamlets was never completed.  The Hamlets was a habitat for timber rattlesnakes.  In 2010, staff of the New York Department of Environmental Conservation told Town officials that they would recommend a two year study of

9

the rattlesnake habitat before the land could be developed further.

9. The Town continued to recognize the full amount of the receivable as an asset in the Town's General Fund in each year from 2009 to 2013, despite the RLDC's failure to purchase The Hamlets and despite the inability and the failure of the RLDC to pay any portion of the receivable during that period. ST. LAWRENCE and others made false statements to the Town's outside auditors and others regarding the receivable's origin and likelihood of payment in order to maintain fraudulently the receivable as an asset in the General Fund. These false statements included: a) the false statement by ST. LAWRENCE and others that the $3,080,000 receivable arose from the RLDC's purchase of the land on which Ramapo Commons was built, as opposed to the RLDC's unconsummated purchase of The Hamlets; b) false and misleading promises by ST. LAWRENCE and others that the RLDC would make whole or partial payments on the receivable by specified dates while knowing that it was substantially unlikely that the RLDC would be able to make those payments; and c) the false statement by ST. LAWRENCE in 2013 that the RLDC had been unable to make payments on the receivable because of the manner in which the New York Attorney General had limited the ability of the RLDC to close on sales of condominium units at Ramapo Commons.

10. The Town recognized the receivable as nonspendable but continued to maintain it as an asset in the General Fund after the defendants learned in 2013 that the Town's and RLDC's bond issues

10

were subjects of investigations by this Grand Jury and the United States Securities & Exchange Commission.

11.  Had the receivable not been recognized as an asset, the balance of the General Fund would have been negative in each year from 2010 through 2014.

### The Town's $3,145,503 Receivable

12.  In May 2013, CHRISTOPHER ST. LAWRENCE, the defendant, and others represented that the Town's General Fund had an estimated, unaudited balance of $1,495,034 as of December 31, 2012, which included, among other things, a $3,145,503 receivable from the federal government for reimbursement of expenses relating to tropical storm Irene and post-tropical cyclone Sandy.  These representations regarding the amount of the receivable and, therefore, the General Fund balance as of December 31, 2012, were materially false because the Town had not yet submitted claims in that total amount to the federal government for reimbursement of such expenses, the federal government had not yet approved reimbursements in that amount and because a portion of the reimbursements were payable to funds other than the General Fund.

### Transfers from the Ambulance Fund

13.  The Town's Ambulance Fund, which was contained within the Town's Special District Funds, received revenue in part from property taxes assessed on real property in Ramapo.  The group of properties on which the tax for the Ambulance Fund was imposed in

11

each year from 2009 from 2014 was different than the group of properties on which the tax for the General Fund was imposed in those years.   New York State law required that transfers between funds with different tax bases could only consist of loans that were to be repaid with interest.

14.   In each year from 2009 through 2014, the revenues of the Ambulance Fund substantially exceeded its operating expenses. In each of those years, the Town transferred money from its Ambulance Fund to its General Fund without consideration and without requiring repayment or the payment of interest.   A total of more than $12,000,000 was transferred from the Ambulance Fund to the General Fund in those years.

15.   These transfers were based on knowingly false statements by CHRISTOPHER ST. LAWRENCE, the defendant, and others to the Town's outside auditors and others that the General Fund and the Ambulance Fund shared the same tax base.

**The Town's Undisclosed Account Payable**

16.   The Town's financial statements for the years 2011 through 2014 failed to include an account payable owed to a civil engineer in an amount exceeding $600,000 that was not otherwise reflected in the financial statements of the RLDC.

17.   On or about December 11, 2013, the Town Board adopted a resolution to pay the civil engineer in an amount not to exceed $900,000.   Despite the resolution, the account payable was not

12

recognized in the Town's financial statements for 2013 or 2014.

18.    In each year from 2011 to 2014, CHRISTOPHER ST. LAWRENCE, the defendant, made knowingly false statements to the Town's auditors that all material transactions had been properly recorded in the Town's accounting records underlying the Town's financial statements.

### The Liquidity of the RLDC

19.    In or about November 2012, CHRISTOPHER ST. LAWRENCE, the defendant, made the materially false statement that the RLDC had fully reimbursed the Town for the Town's March 2012 and September 2012 payments of principal and interest on the RLDC's April 2011 bonds from the RLDC's operating revenue.  In February 2013, N. AARON TROODLER, the defendant, made the materially false statement that the RLDC had fully reimbursed the Town for the Town's March 2012 and September 2012 payments of principal and interest on the RLDC's April 2011 bonds from the RLDC's operating revenue.

20.    The RLDC did not make either payment to the Town in 2012 from its operating revenue.  In or about March 2012, N. AARON TROODLER, the defendant, on behalf of the RLDC, reimbursed the Town for the March 2012 payment primarily out of funds CHRISTOPHER ST. LAWRENCE, the defendant, drew down on the RLDC's line of credit that was guaranteed by the Town.  The RLDC otherwise did not have sufficient liquidity at that time to make the payment.

21.    In or about August 2012, N. AARON TROODLER, the

13

defendant, on behalf of the RLDC, reimbursed the Town for the September 2012 payment substantially from funds he requested and received from the Town as supposed reimbursement for drainage work at Ramapo Commons.  The RLDC otherwise did not have sufficient liquidity at that time to make the payment.

22.   In or about May 2014, ST. LAWRENCE made the materially false statement that the RLDC had fully reimbursed the Town for the Town's March 2014 payment of principal and interest from the proceeds of sales of condominium units at Ramapo Commons.  N. AARON TROODLER, the defendant, on behalf of the RLDC, reimbursed the Town for the March 2014 payment primarily out of non-recurring revenue the RLDC received from the sale, arranged by CHRISTOPHER ST. LAWRENCE, the defendant, of the only real property the RLDC owned other than its ownership interests in the baseball stadium and Ramapo Commons.  The RLDC otherwise did not have sufficient liquidity at that time to make the payment.

23.   In or about May 2015, CHRISTOPHER ST. LAWRENCE, the defendant, made the materially false statement that the RLDC had fully reimbursed the Town for the Town's September 2014 payment of interest on the RLDC's February 2013 bonds from the proceeds of sales of condominium units at Ramapo Commons.  N. AARON TROODLER, the defendant, on behalf of the RLDC, reimbursed the Town for the September 2014 payment primarily out of funds ST. LAWRENCE and TROODLER had requested and received from the Town for the purpose

14

of paying legal expenses the RLDC had supposedly incurred on behalf of the Town.  The RLDC otherwise did not have sufficient liquidity at that time to make the payment.

24.  CHRISTOPHER ST. LAWRENCE, the defendant, and N. AARON TROODLER, the defendant, thereby created the false appearance that the RLDC had been able to make the scheduled payments of principal and interest on its bonds in 2012 and 2014 from recurring operating revenue, thus falsely minimizing the risks that the RLDC would fail to make interest or principal payments in full amounts or in a timely manner in the future or that the Town would have to make a portion or all of the payments pursuant to its guarantees of the bonds in the future.

## THE CONSPIRACY

25.  From in or about November 2009 to the present, in the Southern District of New York and elsewhere, CHRISTOPHER ST. LAWRENCE and N. AARON TROODLER, the defendants, and others known and unknown, knowingly and willfully did conspire and agree together and with each other to commit offenses against the United States, namely violations of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 1343.

## OBJECTS OF THE CONSPIRACY

### Securities Fraud

26.  It was a part and object of the conspiracy that

15

CHRISTOPHER ST. LAWRENCE and N. AARON TROODLER, the defendants, and others known and unknown, knowingly and willfully, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of bonds issued by the Town and by the RLDC, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of conduct which operated and would operate as a fraud and deceit upon the purchaser and seller, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

### Wire Fraud

27.   It was a further part and object of the conspiracy that CHRISTOPHER ST. LAWRENCE and N. AARON TROODLER, the defendants, and others known and unknown, knowingly and willfully, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, namely a scheme and

16

artifice to defraud investors in bonds issued by the Town and by the RLDC, would and did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, all in violation of Title 18, United States Code, Section 1343.

## OVERT ACTS

28.    In furtherance of the conspiracy and to effect the illegal objects thereof, CHRISTOPHER ST. LAWRENCE and N. AARON TROODLER, the defendants, together with others known and unknown, committed the following overt acts, in the Southern District of New York and elsewhere:

a.    On or about March 22, 2011, ST. LAWRENCE directed a Town employee to forward to the Town's and RLDC's bond rating service a spreadsheet which included in the General Fund a false $3,663,547 receivable from the RLDC.

b.    In or about April 2011, ST. LAWRENCE caused the Official Statement corresponding to the RLDC's April 2011 $25,000,000 bond issue to state falsely that the Town's General Fund contained a $3,663,547 receivable from the RLDC and that the General Fund had an adjusted balance of $3,011,117 as of December 31, 2010.

c.    On or about April 15, 2011, TROODLER falsely certified that to the best of his knowledge, the Official Statement issued in connection with the April 2011 RLDC bonds did not contain

17

an untrue statement of material fact, and did not omit any material fact which should be included therein for the purpose for which the Official Statement was to be used, or which was necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

    d.    On or about May 5, 2011, TROODLER drafted a letter to the Town's outside auditors in which he stated that the $3,080,000 receivable arose from the Town's sale of The Hamlets to the RLDC and further stated falsely that the RLDC would be able to pay at least a majority of the receivable in 2011.

    e.    On or about May 9, 2011, ST. LAWRENCE directed Town employees and the Town's outside auditors to switch, without basis, the transaction underlying the $3,080,000 receivable from the RLDC's unconsummated purchase of The Hamlets to the RLDC's purchase of the land on which Ramapo Commons was built.

    f.    In or about May 2011, ST. LAWRENCE caused the Town Attorney to represent falsely in a letter to the Town's outside auditors that the $3,080,000 receivable arose from the Town's purchase of the land at Ramapo Commons and to make the false and misleading promises that the RLDC would pay a portion of the receivable imminently and would pay the remainder by the end of 2011.

    g.    On or about March 2, 2012, ST. LAWRENCE drew down $985,000 from the RLDC's line of credit and caused the money to be deposited into the RLDC's checking account.

h.   On or about March 6, 2012, TROODLER issued a check drawn on the RLDC's checking account and made payable to the Town in the amount of $1,937,477 to reimburse the Town for its March 2012 payment of principal and interest on the RLDC's April 2011 bonds.

i.   In or about May 2012, ST. LAWRENCE caused the Town Attorney to represent falsely in a letter to the Town's outside auditors that the $3,080,000 receivable arose from the Town's purchase of the land at Ramapo Commons and to make the false and misleading promises that the RLDC would pay a portion of the receivable in 2012 and would pay the remainder by the end of 2013.

j.   On or about June 12, 2012, ST. LAWRENCE signed a management representation letter regarding the audit of the Town's 2011 financial statements and addressed to the Town's outside auditors in which he stated falsely, among other things, that he had no knowledge of any fraud affecting the Town involving management.

k.   On or about August 17, 2012, TROODLER requested reimbursement of $508,279 to the RLDC from the Town for drainage work at Ramapo Commons.

l.   On or about August 29, 2012, TROODLER issued a check drawn on the RLDC's checking account and made payable to the Town in the amount of $411,250 to reimburse the Town for its September 2012 payment of interest on the RLDC's April 2011 bonds.

m.   On or about September 21, 2012, ST. LAWRENCE falsely certified that to the best of his knowledge, the Official

19

Statement issued in connection with the Town's September 2012 bond issue did not contain an untrue statement of material fact, and did not omit any material fact which should be included therein for the purpose for which the Official Statement was to be used, or which was necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

n.    On or about November 13, 2012, ST. LAWRENCE falsely told the Town's and RLDC's bond rating service that he expected the Town's General Fund balance as of December 31, 2012 would be unchanged from the supposed $2,400,151 General Fund balance as of December 31, 2011.

o.    On or about November 28, 2012, ST. LAWRENCE falsely certified that to the best of his knowledge, the Official Statement issued in connection with the Town's November 2012 bond issue did not contain an untrue statement of material fact, and did not omit any material fact which should be included therein for the purpose for which the Official Statement was to be used, or which was necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

p.    On or about January 25, 2013, ST. LAWRENCE represented to the Town's and RLDC's bond rating service that the pace of condominium unit sales at Ramapo Commons had eclipsed the RLDC's own schedule.

q.    On or about January 25, 2013, ST. LAWRENCE

20

falsely told the Town's and RLDC's bond rating service during a telephone conference call that he expected the Town's General Fund balance as of December 31, 2012 would be unchanged from the supposed $2,400,151 General Fund balance as of December 31, 2011.

r.   Immediately after the telephone conference call with the Town's bond rating service ended on or about January 25, 2013, ST. LAWRENCE urged Town employees "to do this [upcoming] refinancing of the short term debt as fast as possible because . . . we're going to have to all be magicians to get to some of those numbers."

s.   On or about February 7, 2013, TROODLER falsely certified that to the best of his knowledge, the Official Statement issued in connection with the RLDC's February 2013 bond issue did not contain an untrue statement of material fact, and did not omit any material fact which should be included therein for the purpose for which the Official Statement was to be used, or which was necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

t.   On or about April 5, 2013, ST. LAWRENCE falsely certified that to the best of his knowledge, the Official Statement issued in connection with the Town's April 2013 bond issue did not contain an untrue statement of material fact, and did not omit any material fact which should be included therein for the purpose for which the Official Statement was to be used, or which was necessary

21

to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

u.   On or about April 26, 2013, TROODLER falsely told a media reporter that the RLDC refinanced its April 2011 bonds in February 2013 to save on interest expenses and not because the RLDC's revenue stream was inadequate to make the bond payments.

v.   On or about May 21, 2013, ST. LAWRENCE caused a spreadsheet showing a projected balance in the Town's General Fund of $1,495,034 as of December 31, 2012, which balance included a fraudulently inflated $3,145,503 receivable from the Federal Emergency Management Agency, to be sent to the placement agent on the Town's May 2013 bonds.

w.   On or about May 24, 2013, ST. LAWRENCE executed the placement memorandum issued in connection with the May 2013 Town bonds.

x.   In or about the summer of 2013, ST. LAWRENCE falsely represented to the Town's outside auditors that the RLDC had been unable to make payments on the receivable because of the manner in which the New York Attorney General had limited the ability of the RLDC to close on sales of condominium units at Ramapo Commons.

y.   On or about September 19, 2013, ST. LAWRENCE signed a management representation letter regarding the audit of the Town's 2012 financial statements and addressed to the Town's outside auditors in which he stated falsely, among other things, that he had

no knowledge of any fraud affecting the Town involving management.

z.   On or about March 12, 2014, TROODLER issued a check drawn on the RLDC's checking account and made payable to the Town in the amount of $995,862 to reimburse the Town for its March 2014 payment of principal and interest on the RLDC's February 2013 bonds.

aa.   On or about May 21, 2014, ST. LAWRENCE executed the placement memorandum issued in connection with the May 2014 Town bonds.

bb.   On or about July 30, 2014, ST. LAWRENCE signed a management representation letter regarding the audit of the Town's 2013 financial statements and addressed to the Town's outside auditors in which he stated falsely, among other things, that he had no knowledge of any fraud affecting the Town involving management, that all material transactions had been reflected in the financial statements and that the Town had provided the auditors with access to all information relevant to the preparation of the financial statements.

cc.   On or about August 20, 2014, TROODLER requested reimbursement of $695,000 for legal fees the RLDC supposedly incurred on behalf of the Town in a letter to the Town Attorney.

dd.   On or about August 21, 2014, ST. LAWRENCE caused the Town Board to adopt a resolution authorizing the payment of $695,000 to the RLDC.

ee.   On or about August 22, 2014, TROODLER requested a payment of $495,000 from the Town to the RLDC for supposed reimbursement of legal fees.

ff.   On or about September 3, 2014, TROODLER issued a check drawn on the RLDC's checking account and made payable to the Town in the amount of $557,600 to reimburse the Town for its September 2014 payment of interest on the RLDC's February 2013 bonds.

gg.   On or about October 27, 2014, ST. LAWRENCE falsely told the Town Board that the Ambulance Fund and the General Fund had the same tax base and said further that the Ambulance Fund made money for the General Fund.

hh.   On or about March 18, 2015, ST. LAWRENCE signed a management representation letter regarding the audit of the Town's 2014 financial statements and addressed to the Town's outside auditors in which he stated falsely, among other things, that he had no knowledge of any fraud affecting the Town involving management, that all material transactions had been reflected in the financial statements and that the Town had provided the auditors with access to all information relevant to the preparation of the financial statements.

ii.   On or about May 19, 2015, ST. LAWRENCE executed the placement memorandum issued in connection with the May 2015 Town bonds.

(Title 18, United States Code, Section 371)

24

## COUNTS TWO THROUGH NINE

### (Securities Fraud)

The Grand Jury further charges:

29.    The allegations set forth in paragraphs 1 through 24 are repeated and realleged as if set forth fully herein.

30.    From in or about November 2009 to the present, in the Southern District of New York and elsewhere, CHRISTOPHER ST. LAWRENCE and N. AARON TROODLER, the defendants, knowingly and willfully, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of the securities set forth below, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon purchasers and sellers of such securities as set forth below:

| COUNT | ISSUER | ISSUE DATE |
|-------|--------|------------|
| 2 | RLDC | April 2011 |
| 3 | Town | September 2012 |

25

| 4 | Town | November 2012 |
| 5 | RLDC | February 2013 |
| 6 | Town | April 2013 |
| 7 | Town | May 2013 |
| 8 | Town | May 2014 |
| 9 | Town | May 2015 |

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; Title 18, United States Code, Section 2)

## COUNTS TEN THROUGH SEVENTEEN

### (Wire Fraud)

The Grand Jury further charges:

31.   The allegations set forth in paragraphs 1 through 24 are repeated and realleged as if set forth fully herein.

32.   The underwriters and placement agents of bonds issued by the Town and the RLDC submitted the Official Statement or placement memorandum corresponding to each bond issue, as set forth below, from the Southern District of New York to the Electronic Municipal Market Access ("EMMA") system maintained by the Municipal Securities Rulemaking Board by wire to EMMA's servers in Virginia or Pennsylvania for public viewing over the Internet.

33.   On or about the dates set forth below, in the Southern District of New York and elsewhere, CHRISTOPHER ST. LAWRENCE and N. AARON TROODLER, the defendants, together with others known and unknown, knowingly and willfully, having devised and intending to

26

devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, as set forth below:

| COUNT | ISSUER | APPROXIMATE DATE OF SUBMISSION TO EMMA | LOCATION OF RECEIVING EMMA SERVER |
|---|---|---|---|
| 10 | RLDC | April 18, 2011 | Pittsburgh, PA |
| 11 | Town | September 24, 2012 | Pittsburgh, PA |
| 12 | Town | December 3, 2012 | Pittsburgh, PA |
| 13 | RLDC | February 25, 2013 | Alexandria, VA |
| 14 | Town | April 11, 2013 | Pittsburgh, PA |
| 15 | Town | May 28, 2013 | Richmond, VA |
| 16 | Town | May 27, 2014 | Pittsburgh, PA |
| 17 | Town | May 21, 2015 | Richmond, VA |

(Title 18, United States Code, Sections 1343 and 2)

## COUNTS EIGHTEEN THROUGH TWENTY-TWO

### (Wire Fraud)

The Grand Jury further charges:

34. The allegations set forth in paragraphs 1 through 24 are repeated and realleged as if set forth fully herein.

35. At all times relevant to this Indictment, money transmitted through the Fedwire Funds Transfer System was routed from

27

its origin to its destination through Texas and New Jersey.

36.   On or about the dates set forth below, in the Southern District of New York and elsewhere, CHRISTOPHER ST. LAWRENCE and N. AARON TROODLER, the defendants, together with others known and unknown, knowingly and willfully, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds through the Fedwire Funds Transfer System to the Town's bank accounts in the Southern District of New York, as set forth below:

| COUNT | APPROXIMATE DATE | NATURE OF WIRE TRANSMISSION |
| --- | --- | --- |
| 18 | September 27, 2012 | Wire of approximately $18,151,297.49 in proceeds of the Town's September 2012 bond issue |
| 19 | April 25, 2013 | Wire of approximately $1,004,025.45 in proceeds of the Town's April 2013 bond issue |
| 20 | May 28, 2013 | Wire of approximately $31,202,308.00 in proceeds of the Town's May 2013 bond issue |

28

| 21 | May 27, 2014 | Wire of approximately $2,441,404.72 in proceeds of the Town's May 2014 bond issue |
| 22 | May 27, 2014 | Wire of approximately $33,181,267.53 in proceeds of the Town's May 2014 bond issue |

(Title 18, United States Code, Sections 1343 and 2)

## FORFEITURE ALLEGATION

37.    As the result of committing one or more of the offenses alleged in Counts One through Twenty-Two of this Indictment, CHRISTOPHER ST. LAWRENCE and N. AARON TROODLER, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses.

## Substitute Asset Provision

38.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

29

e.   has been comingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981(a)(1)(C);
Title 21, United States Code, Section 853(p);
Title 28, United States Code, Section 2461.)


_____                    _____
FOREPERSON                                         PREET BHARARA
                                                   United States Attorney


30

*United States District Court*

SOUTHERN DISTRICT OF NEW YORK

# THE UNITED STATES OF AMERICA

V.

CHRISTOPHER ST. LAWRENCE and
N. AARON TROODLER,

Defendants.

# INDICTMENT

16 Cr. _____

(In violation of Title 18, United States Code, Section 371;
Title 15, United States Code, Sections 78j(b) and 78ff; Title
18, United States Code, Sections 1343 and 2)

PREET BHARARA
_____
United States Attorney

# A TRUE BILL

_____
Foreperson