

N.Y.S.D. Case #
16-cr-0259-1(CS)

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 15th day of April, two thousand nineteen.

Present:     ROSEMARY S. POOLER,
            DENNY CHIN,
                 *Circuit Judges*,
            RICHARD K. EATON,
                 *Judge*.[1]

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sep 12 2019

---

UNITED STATES OF AMERICA,

                              *Appellee*,

                    v.                                              18-341-cr

CHRISTOPHER ST. LAWRENCE,

                              *Defendant-Appellant*.[2]

---

Appearing for Appellant:     Michael K. Burke, Hodges Walsh Messemer & Burke, LLP,
                            White Plains, N.Y.

Appearing for Appellee:      James McMahon, Assistant United States Attorney (Anna M.
                            Skotko, Daniel Loss, Assistant United States Attorneys, *on the*

---

[1] Judge Richard K. Eaton, United States Court of International Trade, sitting by designation.
[2] The Clerk of the Court is directed to amend the caption as above.

MANDATE ISSUED ON 05/06/2019

*brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Seibel, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED.**

Defendant-Appellant Christopher St. Lawrence appeals from a judgment of conviction entered on January 24, 2018, in the United States District Court for the Southern District of New York (Seibel, *J.*), following a four-week jury trial. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

The jury found St. Lawrence guilty of 20 out of 22 charged counts for conspiracy to commit securities fraud and wire fraud in violation of 18 U.S.C. § 371; committing securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff; and committing wire fraud in violation of 18 U.S.C. § 1343. St. Lawrence was sentenced to 30 months' imprisonment to be followed by three years of supervised release, a $75,000 fine, and a mandatory $2,000 special assessment. On appeal, St. Lawrence primarily argues that (1) stricken evidence pertaining to hypothetical, guilt-assuming questions warrants a new trial; (2) the evidence was insufficient to support his convictions; (3) a new trial is warranted because of *Brady* violations; (4) a new trial is warranted because of juror misconduct; and (5) his sentence was substantively unreasonable. We reject each of these arguments in turn.

### 1. Hypothetical Questions

St. Lawrence first argues that a new trial is warranted due to the district court's improper admission of guilt-assuming hypothetical questions. While St. Lawrence acknowledges that the district court gave limiting and curative instructions, his argument centers on the premise that the instructions were given too late to cure the prejudice that resulted from improper testimony.

Where evidence has been improperly admitted, we review whether a district court's curative instruction was sufficient to render the error harmless. *See, e.g.*, *United States v. Williams*, 585 F.3d 703, 709 (2d Cir. 2009). The law recognizes a presumption that juries follow limiting instructions. *See Zafiro v. United States*, 506 U.S. 534, 540-41 (1993); *accord United States v. Stewart*, 433 F.3d 273, 307 (2d Cir. 2006). This presumption is overcome "where there is an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense." *United States v. Gomez*, 617 F.3d 88, 96 (2d Cir. 2010) (internal quotation marks omitted).

During the trial, investors in the bonds at issue and professionals involved in issuing those bonds testified in response to hypothetical questions that they would not have participated further in buying or issuing the bonds if they learned that St. Lawrence had made intentional misrepresentations about the Town of Ramapo's ("Town's") finances. The district court

overruled defense counsel's objections to these questions, noting at various instances that the lawyer's questions were not evidence and that it was for the jury to determine if the premise of the questions was true. On the ninth day of testimony, the district court raised the issue of whether such testimony could have the effect of suggesting that any false statement made intentionally would automatically be material. After overnight briefing from the parties, the district court struck the testimony and instructed the jury not to consider "questions along the lines of . . . 'if you learned that . . . there was an intentional lie or if you learned that somebody had intentionally lied to you.'" App'x at 2638-39. Likewise, the court prohibited the government from arguing that the intentional nature of misrepresentations contributed to their materiality.

There is no indication, let alone an "overwhelming probability," that the jury was unable to follow the district court's instructions with respect to the hypothetical questions. *Gomez*, 617 F.3d at 96. Accordingly, we reject St. Lawrence's first argument.

### 2. Sufficiency of the Evidence

St. Lawrence next argues that there was insufficient evidence to support his convictions. We review a claim of insufficiency of the evidence de novo. *United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004). Nevertheless, a conviction must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), and the evidence must be viewed in the light most favorable to the government, *United States v. Temple*, 447 F.3d 130, 136-37 (2d Cir. 2006). In addition, the evidence must be considered "in its totality, not in isolation." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000). We must "defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence." *United States v. Dhinsa*, 243 F.3d 635, 648 (2d Cir. 2001) (internal quotation marks omitted).

Here, the evidence showed, in part, that: the $3.08 million receivable was included as an asset in the General Fund, and "carried over year to year," based on false representations that it would be paid soon even though "the defendant knew it would not be repaid in time to be properly included as a receivable" Gov't Sp. App'x at 172-73; the omission of the Jackson payable inflated the General Fund balance by $800,000; offering documents said that $3.145 million would be received as reimbursement from FEMA, even though less than $900,000 of FEMA money actually went into the General Fund; St. Lawrence told Town employees that they needed to refinance the Town's development corporation's "short term debt as fast as possible, because . . . we're going to have to pull, all be magicians to get to some of those uh numbers"; St. Lawrence directed the attorney who signed the offering documents to help cover up the use of legal fee money to make bond payments; and that the development corporation for the Town would not have been able to make its payments absent the misrepresentations at issue. Such evidence was sufficient to support St. Lawrence's convictions. *See, e.g.*, *United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018); *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017*)*; *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 113 (2d Cir. 2008).

### 3. Alleged *Brady* Violations

Third, St. Lawrence argues that a new trial is warranted because the government "failed to make a fulsome disclosure" with respect to submissions to the SEC by three professionals who worked on the challenged bond issues and because the district court improperly admitted a "hearsay email" of one of those professionals. (Appellant's Br. at 46, 53.)

This Court reviews denial of a defendant's *Brady* claim for abuse of discretion. *United States v. Abu-Jihaad*, 630 F.3d 102, 142 (2d Cir. 2010). To establish a *Brady* violation, "a defendant must show that: (1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001). "Undisclosed evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) (internal quotation marks omitted). "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Coppa*, 267 F.3d at 144.

Prior to trial, the government provided St. Lawrence with Wells submissions made by two auditors and bond counsel. St. Lawrence argued before trial that the government violated *Brady* with respect to these submissions. The district court did not abuse its discretion in reasoning that the material was turned over in time for its effective use and that St. Lawrence could have "talked to the auditors and the underwriters" himself, as "[i]t was certainly obvious that their views could be important." Gov't Sp. App'x at 205-208.

In addition to his *Brady* argument, St. Lawrence also argues that an email from one of the professionals identifying St. Lawrence as the declarant of a statement in the Town's November 2012 bond offering was improperly admitted. This Court reviews a district court's decision to admit evidence for abuse of discretion and will find so only where the district court ruled in an arbitrary or irrational fashion. *See United States v. Barret*, 848 F.3d 524, 531 (2d Cir. 2017). The district court did not abuse its discretion in determining that the emails were admissible. *See* Fed. R. Evid. 801(d)(2).

### 4. Alleged Juror Misconduct

St. Lawrence next argues that juror misconduct warranted a new trial because the district court should have at least investigated claims of religious bias by the jury following a juror's post-verdict interview by the media. We review for abuse of discretion the district court's decision regarding the effect on the jury of potentially prejudicial occurrences. *Stewart*, 433 F.3d at 303. "Post-trial jury scrutiny is disfavored because of its potential to undermine full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople." *Id.* at 302 (internal quotation marks omitted). "Accordingly, probing jurors for potential instances of bias, misconduct or extraneous influences after they have reached a verdict is justified only when reasonable grounds for investigation exist . . . where there is clear, strong, substantial and

4

incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial." *Id*. at 302-03 (internal quotation marks omitted).

In a post-trial media interview, a juror stated in part that the jury took an initial vote that showed nine guilty votes and one not-guilty vote and that some jurors initially had made up their minds before discussing the case. Over two months after filing a motion for evidentiary hearing or for permission to interview the juror, defense counsel notified the district court that the reporter told him that the juror had said his fellow jurors believed that St. Lawrence "was protecting the Jews." App'x at 4016. St. Lawrence argues that "political adversaries believed [he] favored his supportive voting bloc from the Hasidic Jewish Community." (Appellant's Reply Br. at 6.)

St. Lawrence raised his concerns before the district court. Citing *Stewart*, the district court expressed skepticism regarding the statement and reasoned that St. Lawrence "has not offered evidence of a specific nonspeculative impropriety let alone clear, strong, substantial an[d] incontrovertible evidence thereof," that "courts must be wary of taking out of context comments made by jurors," and that it is "hardly a surprise at the end of the trial . . . that the 12 jurors had initial impressions that they voted on." Gov't Sp. App'x at 176. While the religious suggestion, if made, is indeed troubling, the district court did not abuse its discretion in concluding that the statement did not constitute "clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial." *Stewart*, 433 F.3d at 303 (internal quotation marks omitted).

### 5. Substantive Reasonableness of the Sentence

Finally, St. Lawrence argues that the district court's two-level, six-month upward departure was substantively unreasonable. While appellate courts have a role to play in "patrol [ling] the boundaries of reasonableness," *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008), we do so modestly, not substituting our own judgment for that of district courts, *see id*. at 189, but rather, identifying as substantively unreasonable only those sentences that are so "shockingly high, shockingly low, or otherwise unsupportable as a matter of law" that allowing them to stand would "damage the administration of justice," *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).

Here, the district court reasoned that "[b]ecause the Government failed to prove a loss amount, there were no victims as defined in 2B1.1(b)(2)(A)(i), but because the fraud victimized far more than 10 investors, the Court departed upward two levels based on an aggravating circumstance of a kind not taken into account by the Guidelines." SOR at 2. Section 5K2.0 provides that the district court may depart from the Guideline range if there exists an aggravating or mitigating circumstance "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." U.S.S.G. § 5K2.0(a)(1)(A). We cannot conclude that the district court's two-level upward departure was substantively unreasonable.

5

We have considered the remainder of St. Lawrence's arguments and find them to be without merit. Accordingly, we hereby AFFIRM the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit